UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STONEY EAGLE BARTLETT,            ) | |
|                     *Plaintiff*             ) | |
| v.                                                              ) | Docket No. 05-23-B-W |
| JO ANNE B. BARNHART,            ) | |
| **Commissioner of Social Security,**  ) | |
|                     *Defendant*          ) | |

**REPORT AND RECOMMENDED DECISION[1]**

This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that he is disabled by anxiety, a learning disorder and depression, is capable of returning to past relevant work as a flagger. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had affective/mood disorders, anxiety-related disorders and learning disorders, impairments that were severe but did not meet or equal those listed

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on August 5, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 3-4, Record at 20; that these impairments did not prevent the plaintiff from performing his past relevant work as a flagger, Finding 9, *id.*; and that he therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. § 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff complains that the administrative law judge failed to (i) undertake the analysis required by SSR 82-62 and (ii) complete the record. *See generally* Statement of Specific Errors ("Statement of Errors") (Docket No. 10). I agree that on the basis of the first of these two points, remand is warranted.

**I. Discussion**

To be deemed capable of returning to past relevant work, a claimant must retain the RFC to perform either "the actual functional demands and job duties of a particular past relevant job" or, "when the demands of the particular job which claimant performed in the past cannot be met, . . . the functional demands of that occupation as customarily required in the national economy[.]" *Santiago v. Secretary of Health & Human Servs.*, 944 F.2d 1, 5 & n.1 (1st Cir. 1991) (citations and internal quotation marks omitted); *see also, e.g.*, SSR 82-62, at 811.

Per SSR 82-62, a Step 4 determination must contain specific findings of fact regarding (i) the claimant's RFC, (ii) the physical and mental demands of the past job/occupation and (iii) the fit between RFC and the demands of the past relevant work. *See, e.g.*, SSR 82-62, at 813. As the plaintiff suggests, the decision in this case veered from this mandated analytical route. *See* Statement of Errors at 2-4.

1. **Claimant's RFC**. The administrative law judge omitted any finding of mental RFC ("MRFC") from his official findings of fact. *See* Record at 19-20. However, in the body of his decision, he stated: "The undersigned accepts the DDS assessment in Exhibit B-3F [encompassing a Psychiatric Review Technique Form ("PRTF") and mental RFC ("MRFC") assessment by Disability Determination Services ("DDS") non-examining consultant Lewis F. Lester, Ph.D., *see id.* at 374-93] that the claimant would have limitations in interacting appropriately with the public and in getting along with co-workers." *Id*. at 19. In his MRFC, Dr. Lester had found the plaintiff "markedly limited" in ability to interact appropriately with the general public and "moderately limited" in ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. *See id*. at 391. However, he also found the plaintiff, *inter alia*, "markedly limited" in ability to understand, remember and carry out detailed instructions and "moderately limited" in (i) ability to

3

maintain attention and concentration for extended periods, (ii) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (iii) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See id*. at 390-91.

      The plaintiff complains, as a threshold matter, that the administrative law judge erred in seemingly overlooking many of Dr. Lester's MRFC findings (which the plaintiff posits are similar to those found by other DDS consultants). *See* Statement of Errors at 3-4; *see also, e.g.*, Record at 149, 153 (psychological evaluation dated March 2, 2001 by DDS examining consultant David W. Booth, Ph.D., finding, "In a work environment, it would be expected that Mr. Bartlett would fail to demonstrate an understanding of work instructions and would fail to demonstrate a memory of what he has been told. It would be expected that he would withdraw from work requirements, as a result of reported fatigue and in response to his reported emotional distress."); 154-55 (MRFC assessment dated March 22, 2001 by DDS non-examining consultant Peter G. Allen, Ph.D., finding, *inter alia*, marked limitation in dealing with detailed instructions, and not-significant to moderate limitation in ability to perform activities within regular schedule and complete normal workday/workweek without interruptions); 172-74 (MRFC dated May 4, 2001 by DDS non-examining consultant David R. Houston, Ph.D., finding, *inter alia*, marked limitation in dealing with detailed instructions and moderate limitation in ability to maintain attention and concentration for extended periods, perform activities within regular schedule and complete normal workday/workweek without interruptions); 471-72 (MRFC by DDS examining consultant Jonathan H. Siegel, Ph.D., finding, *inter alia*, moderate impairment of ability to follow work rules, use judgment, function independently and understand, remember and carry out complex job instructions); *but see id*. at 352-65 (PRTF dated November 12,

4

2002 by DDS non-examining consultant Thomas A. Knox, Ph.D., finding plaintiff's mental impairments non-severe).

At oral argument, counsel for the commissioner took the position that the administrative law judge did in fact adopt all of the restrictions found by Dr. Lester, although he chose to highlight only two of those. For purposes of resolution of the balance of this discussion, I therefore assume that the administrative law judge did just that.

2.  **Demands of Past Relevant Work**.  Moving to the second prong of SSR 82-62 analysis, the plaintiff contends that the administrative law judge erred in making no discernible findings regarding the physical and mental demands of his past work as a flagger. *See* Statement of Errors at 2, 4. I agree.

Once again, the administrative law judge omitted this required finding from his official findings. *See* Record at 19-20. However, in this case, he did not even tuck the finding into the body of his decision. He merely offered the conclusory statement: "The evidence indicates the claimant could return to this occupation [flagger] as generally performed in the national economy." *Id*. at 19. This clearly violates the requirement of SSR 82-62 that a specific finding be made.

At oral argument counsel for the commissioner requested, in essence, that the court treat this error as harmless, deeming the administrative law judge to have found that the flagger job possessed the qualities described by the plaintiff himself. *See id*. at 125. Counsel further argued that the administrative law judge should be deemed to have found (per testimony of the vocational expert at hearing) that the flagger job had an SVP, or specific vocational preparation, of two and was performed at either the light or medium exertional levels. *See id*. at 36. As counsel for the commissioner correctly pointed out, an SVP of two corresponds with unskilled work. *See, e.g., Flagg v. Barnhart*,

5

No. 04-45-B-W, 2004 WL 2677208, at *3 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004).[2] Even assuming *arguendo* that the administrative law judge can be deemed to have made these findings, I conclude, for reasons discussed below, that his decision was flawed in such a manner as to warrant remand.[3]

    3. **Fit Between RFC, Past Relevant Work**. I come to the final finding required by SSR 82-62 analysis: that the claimant retained the RFC to perform the demands of the past relevant work in question. As to this prong, the administrative law judge did make an official, albeit conclusory, finding. *See* Finding 8, Record at 20; *see also id*. at 19. Nonetheless, even assuming *arguendo* that he made the subsidiary findings discussed above, and in the absence of any reasoned analysis on his part, I am unable to discern substantial support in the Record for this ultimate finding. Two examples will suffice to make my point.

    Dr. Lester found, among other things, that the plaintiff was "markedly" limited in dealing with the general public, *see id*. at 391, to the point that "[h]e cannot interact with the public due to his anxiety, depression and personality disorder[,]" *id*. at 393 (emphasis in original). The job of flagger entails "controlling tra[]ffic" – the public. *Id*. at 125. Even granting, as counsel for the commissioner suggested at oral argument, that such interaction consists largely or even entirely of signaling, not speaking with, the public, it is not at all clear to me how a person who has been found utterly unable to "interact" with the public can spend an entire day doing just that, albeit via signaling or signage rather than words.

---

[2] Inasmuch as (i) neither counsel for the plaintiff nor counsel for the commissioner relied, at oral argument, on any Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") listing for the job of flagger, (ii) the Record is barren of any such DOT information, and (iii) the administrative law judge did not rely on the DOT, I will not do so, either.

[3] To presume that the administrative law judge adopted the job description of flagger as set forth by the plaintiff is a bit of a stretch. The administrative law judge stated that the plaintiff could return to the job of flagger "as generally performed in the national economy" – not as actually performed by the plaintiff. *See* Record at 19.

6

Further, Dr. Lester found, among other things, that the plaintiff had several moderate deficits in sustained concentration and persistence. *See id*. at 390-91. In his narrative accompanying his MRFC assessment, he summarized: "He can be reliable and sustain 2 [hour] blocks at simple tasks at a consistent pace over a normal work day/week." *Id*. at 392. The obvious implication of this statement, when combined with Dr. Lester's MRFC findings of limitations, is that the plaintiff can perform only simple tasks and, in addition, requires some kind of break approximately every two hours to be able to keep up his concentration, persistence or pace. Even granting that the tasks of a flagger are simple, nothing in the plaintiff's description of the flagger job indicates that he would have been allowed to take breaks every two hours. *See id*. at 125 (describing job as entailing "[t]aking responsib[il]ity" and "standing all day rain or shine").

The bottom line: The administrative law judge failed to make two of the three findings required by SSR 82-62. Even assuming *arguendo* that he can be deemed to have made the subsidiary findings suggested at oral argument by counsel for the commissioner, I am not persuaded that his ultimate finding – that the plaintiff possessed the RFC to return to past relevant work as a flagger – was supported by substantial evidence. The cited errors accordingly cannot be deemed harmless, a state of affairs that necessitates reversal and remand.[4]

For the benefit of the parties on remand, I note that I find the plaintiff's remaining argument – failure to develop the record – without merit. As the plaintiff points out, *see* Statement of Errors at 5, a DDS examining consultant, Kenneth J. Kindya, Ph.D., issued a report dated November 5, 2002 in which he noted that the plaintiff had achieved a full-scale IQ score of 61, a performance IQ score of 63 and a verbal IQ score of 65, *see* Record at 457, 461. Such low scores are "Listings level" – if

---

[4] At oral argument, counsel for the commissioner further contended that the administrative law judge's finding should be upheld on the basis that the plaintiff obviously was able to perform the job of flagger, having previously done it. However, as counsel for the plaintiff noted, the Record contains no information from which one could conclude that the plaintiff's RFC was exactly the same at the time of
*(continued on next page)*

valid, they satisfy one of the criteria for meeting the Listing for mental retardation. *See* Listing 12.05(C) & (D). However, Dr. Kindya expressed doubts about the validity of those scores, stating:

> This patient presented in such a confusing manner and what I view as an inconsistent manner that I do not believe that I can legitimately make any statements regarding his work-related abilities. I believe that to make this judgment, one would need considerably more documentation[,] particularly a documentation of his incarceration to determine what his psychiatric condition was like then as well as early school history to determine the possibility of mental retardation. I would also like to see reports from recent psychological care.

Record at 462.

By letter dated June 19, 2003 the plaintiff's counsel submitted to the Social Security Office of Hearings and Appeals copies of some of the plaintiff's early school records, requesting that they be forwarded to Dr. Kindya for his consideration. *See id*. at 480-81. These records showed, *inter alia*, that during his fifth-grade year the plaintiff achieved IQ scores of 80 (in April 1969) and 63 (in May 1969, using a different test). *See id*. at 351. The plaintiff, who was in special education in sixth, seventh and eighth grades, failed the ninth grade and apparently dropped out of high school thereafter. *See id*. at 350-51. He scored low on standardized testing administered in eighth grade, achieving, for example first percentile for verbal reasoning, third percentile for numerical ability and third percentile for abstract reasoning. *See id*. at 350.

Inasmuch as appears, no one forwarded the school records to Dr. Kindya. At the plaintiff's hearing, held December 10, 2003, the plaintiff's counsel took the position that the school records validated Dr. Kindya's test-score findings, as a result of which the plaintiff met Listing 12.05(C). *See id*. at 24. At the close of the hearing, the administrative law judge stated that he was "going to send this claimant out for a consultative examination for IQ testing." *Id*. at 38. The plaintiff's counsel neither interposed an objection nor requested that his client be sent again to Dr. Kindya. *See id*. The

---

decision as it had been when he performed the flagger job in 1990. *See* Record at 119.

same day, the administrative law judge requested a further psychological consultation, asking that the consultant determine whether the plaintiff was "faking his IQ" and whether the school records were reliable and consistent with his IQ, activities of daily living and achievements. *See id.* at 278.

In response to this request Dr. Siegel performed post-hearing examination and testing of the plaintiff, yielding scores of 77 for verbal IQ, 81 for performance IQ and 77 for full-scale IQ. *See id.* at 468.[5] In his report, dated May 3, 2004, Dr. Siegel expressed no concern regarding the validity of those scores. *See id.* at 464, 468. He suggested that the results obtained by Dr. Kindya did not reflect the plaintiff's full potential. *See id.* at 469. However, he did not ascribe this to malingering. *See id.* In a separate, undated letter to the DDS, he directly addressed the question of whether the plaintiff had been "faking," stating that neither the test scores he had obtained nor other evidence he had been presented gave cause to believe the plaintiff was malingering. *See id.* at 279. He did not comment on the school records. *See id.*

By letter dated May 20, 2004 the administrative law judge forwarded Dr. Siegel's May 3, 2004 report to the plaintiff's counsel. *See id.* at 474-75. The administrative law judge noted that the plaintiff could "submit any or all of the following: written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider . . . . You may also submit written questions to be sent to the author(s) of the enclosed report(s)." *Id.* at 474. He also advised that the plaintiff could request a supplemental hearing at which he would have the opportunity, *inter alia*, to produce witnesses. *See id.*

The plaintiff's counsel responded by letter dated June 4, 2004. *See id.* at 476-77. He stated that he was "concerned that Dr. Siegel was not provided with a copy of Mr. Bartlett's school records

---

[5] While these scores placed the plaintiff in the middle of the range of borderline intellectual functioning, *see* Record at 468, they are not
*(continued on next page)*

9

which were submitted into evidence at his hearing." *Id*. at 476.  He once again enclosed copies of those records, asserting that they were "extremely important because they were produced at a time when there could be no question about whether Mr. Bartlett was attempting to be manipulative or otherwise trying to skewer the test results." *Id.*  However, counsel did not expressly ask that either Dr. Siegel or Dr. Kindya be provided with the school records or be questioned regarding them. *See id*. at 476-77.  He concluded: "[W]e believe that Dr. Siegel's report provides additional support, when read in conjunction with the other practitioners and Mr. Bartlett's school records, for a finding of disability." *Id*. at 477.  There is no evidence that the administrative law judge sought any further clarification or opinion from any of the consulting examiners.  He issued his adverse decision on October 26, 2004.  *See id*. at 20.

The plaintiff now contends that the administrative law judge failed in his obligation to fully develop the record by neglecting to forward the school records to Dr. Kindya despite two requests that he do so.  *See* Statement of Errors at 6.  Nonetheless, a careful reading of the Record indicates that the plaintiff made no second request that the school records be forwarded to Dr. Kindya.  When the administrative law judge announced at hearing that he would send the plaintiff for a further consultative examination, plaintiff's counsel did not object or request that the plaintiff be sent once more to Dr. Kindya.  When the plaintiff's counsel later received copies of the Siegel report, he did not expressly request that the school records be sent to Dr. Kindya or that he be permitted to reopen the hearing for purposes of calling Dr. Kindya as a witness.  Under the circumstances, the administrative law judge can hardly be faulted for omitting to do so.[6]

---

Listings-level, *see* Listing 12.05.

[6] Further, as counsel for the commissioner noted at oral argument, Dr. Siegel was aware that the plaintiff had been a special-education student and had dropped out of school in ninth grade.  *See* Record at 466.  While Dr. Siegel evidently did not see the underlying school records themselves (including the results of the early IQ tests), he considered the IQ results he obtained for the plaintiff valid and consistent with the plaintiff's own report that he was functioning at a fifth-grade level.  *See id*. at 279.  Moreover, Dr. Siegel's IQ
*(continued on next page)*

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of August, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

finding was consistent with one of the two findings from the plaintiff's early school years. *See id.* at 351. Thus, the duty to develop the record was satisfied in the sense that the commissioner obtained a valid IQ score from a consultant who possessed most of the information provided by the school records and whose IQ finding is consistent with one of two IQ scores reflected in those records.